1  SNELL & WILMER L.L.P.
   Patrick W. Kelly, Bar No. 274588
2  pkelly@swlaw.com
   Aliya L. Astaphan, Bar No. 340162
3  aastaphan@swlaw.com
   350 South Grand Avenue
4  Suite 3100
   City National 2CAL
5  Los Angeles, California  90071
   Telephone:  213.929.2500
6  Facsimile:   213.929.2525

7  Attorneys for Plaintiff
   Tammy Taylor Nails, Inc.
8

9              UNITED STATES DISTRICT COURT

10            SOUTHERN DISTRICT OF CALIFORNIA

11

12  TAMMY TAYLOR NAILS, INC., a          Case No. 24CV0624 BAS JLB
    California corporation,              Hon. Cynthia Bashant
13                                       Hon. Magistrate Jill L. Burkhardt
                 Plaintiff,
14                                       **First Amended Complaint for:**
         v.
15                                       **(1)  Breach of Contract;**
    MELANY VILJOEN, an individual;
16  PEET VILJOEN, an individual;         **(2)  Breach of Contract;**
    TAMMY TAYLOR GLOBAL
17  FRANCHISING, an entity; and          **(3)  Trademark Infringement;**
    DOES 1 THROUGH 10, inclusive,
18                                       **(4)  False Designation of Origin;**
                 Defendants.
19                                       **(5)  Counterfeiting;**

20                                       **(6)  Cancellation of Registered
                                         Trademark; and**
21
                                         **(7)  Common Law Trademark
22                                       Infringement**

23                                       **Demand for Jury Trial**

24

25

26

27

28

SNELL & WILMER
L.L.P.
LAW OFFICES
350 SOUTH GRAND AVENUE
SUITE 3100
CITY NATIONAL 2CAL
LOS ANGELES, CALIFORNIA 90071

Plaintiff Tammy Taylor Nails, Inc. ("TTN") alleges as follows:

## JURISDICTION AND VENUE

1.    This action arises under the Lanham Act, 15 U.S.C. §§1114 and 1125(a), and for trademark infringement, passing off, and unfair competition under the common law and the laws of the state of California.

2.    This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1332(a), 1338(a), 1338(b), and 15 U.S.C. §1121.  This Court has supplemental subject matter jurisdiction over TTN's remaining state law and common law claims under 28 U.S.C. § 1367(a).

3.    This Court has personal jurisdiction over defendants Melany Viljoen and Peet Viljoen because, among other things, they agreed to jurisdiction of this Court under the agreements at issue in this action.

4.    Venue is proper in this district under 28 U.S.C. §1391(b) because defendants Melany Viljoen and Peet Viljoen agreed to venue in the United States District Court for the Southern District of California and at least some of the infringing activity and the harm therefrom is occurring or occurred in this district.

## PARTIES

5.    Plaintiff TTN is, and at all material times herein was, a California corporation with its principal place of business in Southern California.

6.    TTN is informed and believes, and on that basis alleges, that defendant Melany Viljoen ("Melany") is, and at all times herein was, an individual, who is domiciled and resides in South Africa.

7.    TTN is informed and believes, and on that basis alleges, that defendant Peet Viljoen ("Peet") is, and at all times herein was, and individual, who is domiciled and resides in South Africa.

8.    TTN is informed and believes, and on that basis alleges, that defendant Tammy Taylor Global Franchising is, and at all times herein was, an entity formed in South Africa, with its principal place of business in South Africa.  TTN is further

SNELL & WILMER
L.L.P.
LAW OFFICES
350 SOUTH GRAND AVENUE
SUITE 3100
CITY NATIONAL PLAZA
LOS ANGELES, CALIFORNIA 90071

1  informed and believes that Melany and Peet are the owners and principal operators

2  of the entity called Tammy Taylor Global Franchising.  Melany, Peet, and Tammy

3  Taylor Global Franchising are collectively referred to as "Defendants".

4      9.    TTN does not know the true names or capacities of the defendants

5  sued herein as Does 1 through 10, inclusive, and TTN will amend this Complaint to

6  allege such facts as soon as they are ascertained.  TTN is informed and believes and

7  on that basis alleges that the defendants, and each of them designated herein as

8  Does 1 through 10, inclusive, are in some manner responsible for the events and

9  happenings alleged herein, or otherwise participated in the wrongful acts alleged

10  herein and as a result, caused damages to TTN.  TTN is informed and believes and

11  on that basis alleges that Melany, Peet, and Tammy Taylor Global Franchising and

12  the defendants named as Does 1 through 10, inclusive, are and acted as agents,

13  servants, employees, partners, co-venturers, or shareholders of each other with

14  respect to the allegations alleged herein.

## INTRODUCTION

16      10.    TTN manufactures and sells high quality, beautiful nail and skincare

17  products that are designed to last.  TTN has received worldwide acclaim and

18  recognition for its nail products.  It is named after its owner and creator, Tammy

19  Taylor.  Vanity Fair magazine reported, "Taylor opened her first nail salon in 1981,

20  at age 18 (a year younger than Eilish); two years later, she launched her namesake

21  product line, which has become a global player in the professional space."  TTN

22  has numerous trademarks registered in the United States and South Africa.  In April

23  2017, TTN entered into an International Distribution Agreement with Melany and

24  Peet, which gave Melany and Peet the rights to distribute TTN products in Australia

25  and Africa.  In November 2018, TTN entered into a Master License Agreement

26  with Melany and Peet, which gave Melany and Peet rights to use TTN's marks and

27  TTN's system for operating nail salons to open nail salons in Africa under the

28  Tammy Taylor Nails name.  In 2021, TTN terminated both the International

SNELL & WILMER
L.L.P.
LAW OFFICES
350 SOUTH GRAND AVENUE
SUITE 3100
CITY NATIONAL 2CAL
LOS ANGELES, CALIFORNIA 90071

CASE NO. 24CV0624 BAS JLB
FIRST AMENDED COMPLAINT

Distribution Agreement and the Master License Agreement.  Yet, Melany and Peet continue to hold themselves out as "Tammy Taylor Nails" and sell nail products under the TTN name and trademarks—all without TTN's authorization.  Now, Melany and Peet have started Tammy Taylor Global Franchising to sell purported franchises bearing the Tammy Taylor name and purported products.  Defendants are not permitted to do so and, by doing so, are breaching the International Distribution Agreement's and Master License Agreement's post-term obligations and infringing on TTN's name and trademarks.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

### TTN's Trademarks and Nail Products

11.     Tammy Taylor started TTN in 1983.  Tammy Taylor remains the CEO and President of TTN.  TTN's first line of products included a Nail Liquid, Pink Nail Powder, White Nail Powder, and Non-Lifting Primer.  Today, TTN carries over 2,000 products.  TTN also focuses on nail education, focusing on techniques and procedures for nail products and care.  TTN's products are sold all over the world and are known all over the world.  TTN sells millions of dollars in products yearly.

12.     TTN owns several trademark registrations.  TTN owns the word mark TAMMY TAYLOR, U.S. Registration No. 3,215,705, for nail care products, including but not limited to artificial fingernails and tips, adhesive removers, nail buffers, nail polish, and nail polish remover.  A true and correct copy of U.S. Registration No. 3,215,705 is attached as Exhibit A and fully incorporated by this reference.

13.     TTN owns the word mark TAMMY TAYLOR, U.S. Registration No. 6,234,220, for manicure services, nail care services, and pedicure services.  A true and correct copy of U.S. Registration No. 6,234,220 is attached as Exhibit B and fully incorporated by this reference.

14.     TTN owns the word mark TAMMY TAYLOR, U.S. Registration No.

7,146,638, for retail, online retail and wholesale store services featuring nail care preparation and products. A true and correct copy of U.S. Registration No. 7,146,638 is attached as Exhibit C and fully incorporated by this reference.

15. TTN owns the word mark TAMMY TAYLOR NAILS, U.S. Registration No. 3,215,706, for retail and wholesale store services featuring cosmetics, nail products, and body and hair care products. A true and correct copy of U.S. Registration No. 3,215,706 is attached as Exhibit D and fully incorporated by this reference.

16. TTN owns the word mark TAMMY TAYLOR in South Africa, as well, Registration No. 2017/16838, for nail care products, including but not limited to nail buffers, nail polish, nail polish remover, lotions, oils, false fingernail products, and adhesives. A true and correct copy of Registration No. 2017/16838 is attached as Exhibit E and fully incorporated by this reference.

17. TTN also owns the word mark TAMMY TAYLOR in South Africa, Registration No. 2017/16839, for manicure services, nail care services, nail care salons, pedicure services, and day spa services. A true and correct copy of Registration No. 2017/16839 is attached as Exhibit F and fully incorporated by this reference.

18. TTN also owns a stylized mark in South Africa, Registration No. 2019/14604, for nail care products, artificial fingertips, adhesives, base coats, and other nail care products. A true and correct copy of Registration No. 2019/14604 is attached as Exhibit G and fully incorporated by this reference.

19. TTN owns the stylized mark in South Africa, Registration No. 2019/14605, for online retail and wholesale store services for nail care products. A true and correct copy of Registration No. 2019/14605 is attached as Exhibit H and fully incorporated by this reference.

20. TTN owns the stylized mark in South Africa, Registration No. 2019/14606, for online retail and wholesale store services for nail care products. A

SNELL & WILMER
L.L.P.
LAW OFFICES
350 SOUTH GRAND AVENUE
SUITE 3100
CITY NATIONAL 2CAL
LOS ANGELES, CALIFORNIA 90071

true and correct copy of Registration No. 2019/14606 is attached as Exhibit I and fully incorporated by this reference.

21.    U.S. Registration Nos. 3,215,705 ; 6,234,220; 7,146,638; and 3,215,706 are referred to as the "U.S. Marks". The Registration Nos. 2017/16838; 2017/167839; 2019/14604; 2019/14605; and 2019/14606 are referred to as the "South African Marks". The U.S. Marks and the South African Marks are collectively referred to as the "Marks".

22.    In addition to the above registered Marks, TTN also owns various common law trademark rights. Significantly here, TTN owns the common law trademark for a stylized oval double "T" mark, depicted below (the "Oval Double T Mark"). The Oval Double T Mark was designed in 2011 and first used in the United States in advertising and on products in 2011. TTN has used it ever since.



23.    While TTN first started in 1983, TTN first used the U.S. Marks in commerce in the United States in 1985. TTN first used the South African Marks in commerce in South Africa in 2017. All of these uses were before Defendants first used TTN's Marks.

24.    As a result of extensive advertising and promotion, the Marks and the Oval Double T Mark have acquired significant value and have become distinctive and well-known to the consuming public and the trade as identifying and distinguishing TTN's goods and services.

25.    At least as early as 1985, TTN began marketing and selling its nail care products and services in the United States with the Marks. The products'

SNELL & WILMER
L.L.P.
LAW OFFICES
350 SOUTH GRAND AVENUE
SUITE 3100
CITY NATIONAL PLAZA
LOS ANGELES, CALIFORNIA 90071

packaging prominently displays the Marks.  TTN began marketing and selling its nail care products and services in the United States with the Oval Double T Mark at least as early as 2011.  At least as early as 2017, TTN began marketing and selling its nail care products and services in South Africa with the Marks.  Because of TTN's extensive use of the TAMMY TAYLOR Marks and the Oval Double T Mark, consumers associate the Marks and the Oval Double T Mark with TTN's goods and services.  TTN has developed a substantial amount of goodwill in the Marks and the Oval Double T Mark.

26.    The Marks and the Oval Double T Mark have also acquired secondary meaning through, among other things, TTN's sales, advertising, and promotional efforts.

**TTN's Agreements With Melany and Peet**

27.    On or about April 11, 2017, TTN, on one hand, and Melany and Peet, on the other hand, entered into an International Distribution Agreement whereby TTN gave Melany and Peet the rights to distribute TTN products in Australia and Africa (the "Distribution Agreement").  A true and correct copy of the Distribution Agreement is attached as Exhibit J and fully incorporated by this reference.

28.    The Distribution Agreement granted Melany and Peet a "non-exclusive, non-assignable, non-licensable privilege to use the Trade Designations [defined to include TTN's trademarks], solely in connection with the promotion, advertising, and distribution of the Products within the Territory and only during the Term."  Melany and Peet also specifically acknowledged that TTN owned all the rights to its trademarks, including but not limited to the Marks and the Oval Double T Mark.

29.    Upon termination of the Distribution Agreement, Melany and Peet agreed not to use any of TTN's trademarks.

30.    On or about November 18, 2018, TTN, on one hand, and Melany and Peet, on the other hand, entered into a Master License Agreement whereby TTN

gave Melany and Peet the rights to use the Marks in Africa and sublicense them to third party salons (the "License Agreement"). A true and correct copy of the License Agreement is attached as Exhibit K and fully incorporated by this reference.

31.    Melany and Peet again acknowledged TTN's ownership of TTN's trademarks, including but not limited to the Marks and the Oval Double T Mark.

32.    Upon termination of the License Agreement, Melany and Peet's rights to use any of TTN's trademarks cease as do any sublicenses that they granted.

## TTN Terminated the Agreements and Defendants Infringed the Marks

33.    The License Agreement was terminated in 2021 and the Distribution Agreement was terminated, effective in April 2022. Thus, any rights the Viljoens had to sell the Tammy Taylor Nails products or use the trademarks ceased in April 2022. As a result, Melany and Peet's rights to use the Marks, distribute TTN products, or sublicense the Marks terminated, as well.

34.    Now, however, Melany and Peet continue to hold themselves out as TTN and affiliated with TTN. Defendants are marketing and selling nail products, services, and retail locations using the Marks and the Oval Double T Mark. Melany and Peet continue to offer sublicenses under the TTN name, the Marks, and the Oval Double T Mark to third parties. Indeed, often the third parties are not happy with the sublicense, damaging TTN's reputation worldwide.

35.    In March of 2024, Melany and Peet also started a business called Tammy Taylor Global Franchising in which they are offering "Tammy Taylor" franchises globally. TTN has not authorized such use. Defendants advertised their global franchise business in New York on billboards in Times Square. Defendants also offer global franchises on their website https://tammytaylornails.org.za (the "Website"), which appears to have launched in March of 2024.[1] The Marks are prominently displayed on the Website. The Website also passes off information

---

[1] The true website for TTN's products and services is https://tammytaylornails.com.

SNELL & WILMER
L.L.P.
LAW OFFICES
350 SOUTH GRAND AVENUE
SUITE 3100
CITY NATIONAL PLAZA
LOS ANGELES, CALIFORNIA 90071

about TTN as Defendants' own background and history.

36.     Melany is a reality television actress in South Africa.  She appeared on a reality television show similar to the "Real Housewives" shows in the United States.  Melany has over 38,000 followers on Instagram where she markets and advertises "Tammy Taylor" franchises and uses the Marks and the Oval Double T Mark to advertise Defendants' business.

37.     Defendants are trying to pass off their nail products, services, and retail stores as those of TTN's, associated with TTN's, or endorsed by TTN, and trade off TTN's goodwill.

38.     Defendants' use of TTN's Marks and the Oval Double T Mark is such that prospective purchasers or consumers of Defendants' goods and services and TTN's goods and services are likely to be confused as to the source of the goods and services.

39.     Defendants' use of the Marks in commerce in connection with Defendants' goods and services is causing and is likely to cause confusion, deception, and mistake in the minds of the public with respect to the origin and source of the products.

40.     Defendants deliberately misappropriated the Marks and the Oval Double T Mark to trade upon the goodwill that the Marks and the Oval Double T Mark have developed in connection therewith, and to lead consumers to believe that TTN is the source of the goods or services, which in fact do not originate with TTN and are not sponsored by, or affiliated with TTN.

41.     Defendants, including Melany, are stealing TTN's trademarks to bolster their own profiles.  Melany holds herself out as a businesswoman and leader of the "nail empire".  But she is selling TTN's business as if it were her own.

42.     Moreover, Defendants are offering for sale counterfeit products. Defendants are selling nail care products with the Marks as if they are TTN's products, but the products are not from TTN and are inferior.

43.    In 2022, TTN sent Melany and Peet a cease and desist letter to refrain from using TTN's name and Marks.  While Melany and Peet stopped for a while, they have now continued infringing with Tammy Taylor Global Franchising.

44.    Defendants' trademark infringement and counterfeiting has damaged TTN's name and goodwill in an amount to be determined at trial, but at least $100,000,000.

45.    On February 22, 2023, Melany and Peet filed an application with the United States Patent and Trademark Office ("USPTO") to register the Oval Double T Mark as their own for franchise services, namely, offering business management assistance in the establishment and operation of beauty salons.  Melany and Peet, however, have not used the Oval Double T Mark in commerce in the United States. And Melany and Peet know and already agreed that the oval Double T Mark belongs to TTN.

46.    On March 5, 2024, the USPTO registered Melany and Peet's application for the Oval Double T Mark at U.S. Registration No. 7,322,502.  A true and correct copy of U.S. Registration No. 7,322,502 is attached as Exhibit L and fully incorporated by this reference.

## **FIRST CLAIM FOR RELIEF**

### **(Breach of Contract Against Melany and Peet)**

47.    TTN realleges and incorporates by reference as though fully set forth herein the allegations contained in the preceding paragraphs.

48.    The Distribution Agreement was a valid and enforceable written contract between TTN and Melany and Peet.

49.    TTN performed all the required material terms and conditions of the Distribution Agreement.

50.    TTN validly terminated the Distribution Agreement in April 2021.

51.    TTN breached the Distribution Agreement by, among other things, failing to comply with the post-termination obligations and continuing to use the

SNELL & WILMER
L.L.P.
LAW OFFICES
350 SOUTH GRAND AVENUE
SUITE 3100
CITY NATIONAL 2CAL
LOS ANGELES, CALIFORNIA 90071

1    Marks without authorization from TTN.

2        52.    As a direct and proximate result of Melany and Peet's breaches of the

3    Distribution Agreement, TTN is entitled to compensatory, consequential, and other

4    damages of at least $100,000,000, as well as attorneys' fees and costs, in an amount

5    to be proven at trial.

6                    **SECOND CLAIM FOR RELIEF**

7            **(Breach of Contract Against Melany and Peet)**

8        53.    TTN realleges and incorporates by reference as though fully set forth

9    herein the allegations contained in the preceding paragraphs.

10       54.    The License Agreement was a valid and enforceable written contract

11   between TTN and Melany and Peet.

12       55.    TTN performed all the required material terms and conditions of the

13   License Agreement.

14       56.    TTN validly terminated the License Agreement in April 2021.

15       57.    TTN breached the License Agreement by, among other things, failing

16   to comply with the post-termination obligations and continuing to use the Marks

17   without authorization from TTN.

18       58.    As a direct and proximate result of Melany and Peet's breaches of the

19   License Agreement, TTN is entitled to compensatory, consequential, and other

20   damages of at least $100,000,000, as well as attorneys' fees and costs, in an amount

21   to be proven at trial.

22                    **THIRD CLAIM FOR RELIEF**

23   **(Trademark Infringement Under 15 U.S.C. § 1114 Against All Defendants)**

24       59.    TTN realleges and incorporates by reference as though fully set forth

25   herein the allegations contained in the preceding paragraphs.

26       60.    At least as early as 1985, TTN has continuously used the Marks to

27   identify its goods and to distinguish them from those made and sold by others.

28       61.    Defendants' continued and unauthorized use of the Marks in

SNELL & WILMER
L.L.P.
LAW OFFICES
350 SOUTH GRAND AVENUE
SUITE 3100
CITY NATIONAL 2CAL
LOS ANGELES, CALIFORNIA 90071

connection with the sale of nail care goods and services in the United States and South Africa constitutes trademark infringement under 15 U.S.C. §1114.

62.    Defendants' acts of trademark infringement and unfair competition, as alleged above, were committed with the knowledge that the use of the Marks was intended to cause confusion, mistake, and to deceive.

63.    Defendants' wrongful use in commerce of the Marks is likely to (i) cause confusion and mistake in the minds of the public with respect to the origin, affiliation, and source of Defendants' products and services and (ii) to deceive purchasers of such products into believing that TTN controls the quality thereof and endorses the same.

64.    By reason of Defendants' acts, TTN has suffered and continues to suffer damage to its business, reputation, and goodwill, and the loss of sales and profits TTN would have made but for Defendants' acts, in an amount to be proven at the time of trial, but no less than $100,000,000.

65.    Pursuant to 15 U.S.C. § 1117, TTN is entitled to recover Defendants' profits, any damages sustained by TTN, and the cost of the action, including but not limited to reasonable attorneys' fees, as a result of Defendants' acts of infringement against TTN's Marks.

66.    Defendants have continued to engage in the acts complained of herein after TTN alerted Defendants to their infringement, and unless restrained and enjoined, Defendants may continue to do so, all to TTN's irreparable harm.  It would be difficult to ascertain the amount of compensation which would afford TTN adequate relief from such continuing acts, and a multiplicity of judicial proceedings would be required.  TTN's remedy at law is not adequate to compensate it for the injuries threatened.

SNELL & WILMER
L.L.P.
LAW OFFICES
350 SOUTH GRAND AVENUE
SUITE 3100
CITY NATIONAL PLAZA
LOS ANGELES, CALIFORNIA 90071

**FOURTH CLAIM FOR RELIEF**

**(Violation of Lanham Act by Use of False Designation in**

**Interstate Commerce Against All Defendants)**

67.    TTN realleges and incorporates by reference as though fully set forth herein the allegations contained in the preceding paragraphs.

68.    Defendants caused goods and services to enter into interstate commerce identified by TTN's Marks.  Defendants' use of the Marks was a false designation of origin which was likely to cause confusion, to cause mistake, and to deceive as to the affiliation, connection or association of Defendants' goods and services with TTN and as to the origin, sponsorship, or approval of Defendants' goods and services and TTN's related goods and services.

69.    Defendants' acts, as alleged above, were in violation of 15 U.S.C. §1125(a), because Defendants used in connection with its goods and services a false designation of origin, a false or misleading description and representation of fact which was likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants' goods with TTN and as to the origin, sponsorship, or approval of Defendants' goods and TTN's related goods.

70.    By reason of Defendants' acts, TTN has suffered and continues to suffer damage to its business, reputation, and goodwill, and the loss of sales and profits TTN would have made but for Defendants' acts, in an amount to be proven at the time of trial, but no less than $100,000,000.

71.    Pursuant to 15 U.S.C. § 1117, TTN is entitled to recover Defendants' profits, any damages sustained by TTN, and the cost of the action, including but not limited to reasonable attorneys' fees, as a result of Defendants' acts of infringement against TTN's Marks.

72.    Defendants have continued to engage in the acts complained of herein after TTN alerted Defendants to their infringement, and unless restrained and enjoined, Defendants may continue to do so, all to TTN's irreparable harm.  It

SNELL & WILMER
L.L.P.
LAW OFFICES
350 SOUTH GRAND AVENUE
SUITE 3100
CITY NATIONAL 2CAL
LOS ANGELES, CALIFORNIA 90071

would be difficult to ascertain the amount of compensation which would afford TTN adequate relief from such continuing acts, and a multiplicity of judicial proceedings would be required.  TTN's remedy at law is not adequate to compensate it for the injuries threatened.

### FIFTH CLAIM FOR RELIEF

### (Counterfeiting Against All Defendants)

73.    TTN realleges and incorporates by reference as though fully set forth herein the allegations contained in the preceding paragraphs.

74.    The Marks are used in commerce and are valid, protectable trademarks under the Lanham Act.  At least as early as 1985, TTN has continuously used the Marks to identify its goods and to distinguish those goods from those made and sold by others.

75.    Defendants' continued and unauthorized use of the Marks in connection with the sale of Defendants' nail care products, services, and retail stores constitutes trademark counterfeiting under 15 U.S.C. § 1114.  Defendants' use of the Marks is substantially identical to TTN's use of the Marks.

76.    Defendants' acts of trademark counterfeiting, as alleged above, were committed with the knowledge that the Marks were intended to be used to cause confusion, mistake and to deceive.

77.    Defendants' wrongful use in commerce of the Marks is likely to (i) cause confusion and mistake in the minds of the public with respect to the origin, affiliation, and source of Defendants' products and (ii) to deceive purchasers of such products into believing that TTN controls the quality thereof and endorse the same.

78.    Defendants' conduct is intended to exploit the goodwill and reputation associated with TTN's Marks and to take a competitive advantage without expenditure of resources, by a strategy of willful infringement.

79.    By reason of Defendants' acts, TTN has suffered and continues to

SNELL & WILMER
L.L.P.
LAW OFFICES
350 SOUTH GRAND AVENUE
SUITE 3100
CITY NATIONAL 2CAL
LOS ANGELES, CALIFORNIA 90071

1  suffer damage to its business, reputation, and goodwill, and the loss of sales and

2  profits TTN would have made but for Defendants' acts, in an amount to be proven

3  at the time of trial, but no less than $100,000,000.

4      80.    Pursuant to 15 U.S.C. § 1117, TTN is entitled to recover, at its

5  election, (a) three times Defendants' profits or any damages sustained by TTN,

6  whichever is greater, or (b) an award of statutory damages in the amount of (i) not

7  less than $1,000 or more than $200,000 per counterfeit mark per type of goods sold,

8  offered for sale, or distributed; or (ii) if the Court finds that the use of the

9  counterfeit marks was willful, not more than $2,000,000 per counterfeit mark per

10 type of goods sold, offered for sale, or distributed.  Additionally, TTN is entitled to

11 recover the cost of the action, including but not limited to reasonable attorneys'

12 fees, plus prejudgment interest.

13     81.    Defendants have continued to engage in the acts complained of herein

14 after TTN alerted Defendants to their infringement, and unless restrained and

15 enjoined, Defendants may continue to do so, all to TTN's irreparable harm.  It

16 would be difficult to ascertain the amount of compensation which would afford

17 TTN adequate relief from such continuing acts, and a multiplicity of judicial

18 proceedings would be required.  TTN's remedy at law is not adequate to

19 compensate it for the injuries threatened.

20                    **SIXTH CLAIM FOR RELIEF**

21  **(Cancellation of Registered Trademark Against Melany and Peet Viljoen)**

22     82.    TTN realleges and incorporates by reference as though fully set forth

23 herein the allegations contained in the preceding paragraphs.

24     83.    Melany and Peet Viljoen's registered mark at US Registration No.

25 7,322,502 (the "Viljoen Registration") should be canceled for fraud and priority and

26 likelihood of confusion.

27     84.    As to fraud, a registered mark may be canceled at any time if the

28 registrant committed fraud in its procurement or maintenance.  15 U.S.C.

SNELL & WILMER
L.L.P.
LAW OFFICES
350 SOUTH GRAND AVENUE
SUITE 3100
CITY NATIONAL PLAZA
LOS ANGELES, CALIFORNIA 90071

§ 1064(3).  A registrant thereby commits fraud when it knowingly makes a false, material representation in any sworn declaration submitted to the USPTO with the intent to deceive the USPTO. *See In re Bose Corp.*, 580 F.3d 1240, 1245 (Fed. Cir. 2009).

85.    TTN is the owner of the Oval Double T Mark since it used the mark in commerce well before Melany and Peet Viljoen.

86.    Melany and Peet Viljoen obtained a federal registration as shown in Exhibit L.

87.    On information and belief, knowing that TTN owned rights to the Oval Double T Mark, Melany and Peet Viljoen knowingly made the false material representation in a sworn declaration to the USPTO as follows:  "To the best of the signatory's knowledge and belief, no other persons, except, if applicable, concurrent users, have the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other persons, to cause confusion or mistake, or to deceive."

88.    This statement is false because TTN is in fact a current user with the right to use the mark in commerce in identical or near identical form.

89.    Melany and Peet Viljoen made the materially false representation with the intent to deceive the USPTO, as Melany and Peet Viljoen knew that TTN is the owner of the Oval Double T Mark.

90.    Melany and Peet Viljoen knew that the Viljoen Registration would be used for the same type of goods and services as those under the Oval Double T Mark.  Melany and Peet Viljoen knew there would be a likelihood of confusion between the Viljoen Registration and TTN's Oval Double T Mark (as Melany and Peet Viljoen were aware that TTN owned the Oval Double T Mark and used it in commerce for similar services and goods).

91.    Moreover, Melany and Peet Viljoen further stated that the first date of

SNELL & WILMER
L.L.P.
LAW OFFICES
350 SOUTH GRAND AVENUE
SUITE 3100
CITY NATIONAL PLAZA
LOS ANGELES, CALIFORNIA 90071

use in commerce for its registration was January 21, 2023. They also stated in their application that the mark for registration was used in commerce at the time of the application.

92.    These statements were also false because the Trademark Act defines "use in commerce" as "the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark."

93.    TTN is informed and believes and thereupon alleges that Melany and Peet Viljoen had not used the mark in the Viljoen Registration in commerce in the United States as of January 21, 2023 or at the time of the application. TTN is informed and believes and thereupon alleges that Melany and Peet Viljoen have not used the mark in the Viljoen Registration in the United States.

94.    Melany and Peet Viljoen knew the USPTO would rely on their declaration in its application. The USPTO granted registration based on such false statements and reliance thereon.

95.    The USPTO relied on Melany and Peet Viljoen's false statements.

96.    Absent these false statements in its application declaration and statement of use, the Viljoen Registration would not have been granted.

97.    TTN believes that it has been and will continue to be damaged by the Viljoen Registration and the Viljoen Registration is likely to cause confusion, mistake or to deceive the consuming public and that TTN's rights will be diminished by the continued registration thereof.

98.    Accordingly, this Court may order the cancellation of the Viljoen Registration and order the registration removed from the register.

99.    As to priority and likelihood of confusion, a registered mark may be canceled if it so resembles a federally registered mark or a mark previously used in the United States by another and not abandoned, as to be likely, when used on or in connection with the goods or services of the defendant, to cause confusion, or to cause mistake, or to deceive. 15 U.S.C. § 1052(d); *see Palm Bay Imports Inc. v.*

*Veuve Clicquot Ponsardin Maison Fondee En* 1772, 396 F.3d 1369 (Fed. Cir. 2005); *see also Kohler Co. v. Baldwin Hardware Corp.*, 82 USPQ2d 1100, 1113 (TTAB 2007) (doubt resolved in favor of prior user).

100.    The Viljoen Registration of its mark despite the prior use of TTN's Oval Double T Mark is willful; Melany and Peet Viljoen adopted TTN's Oval Double T Mark with notice and knowledge of TTN's Oval Double T Mark and TTN's rights and interest in and to the Oval Double T Mark.

101.    TTN has priority of use of the Oval Double T Mark, dating back to 2011.

102.    The Viljoen Registration so resembles TTN's Oval Double T Mark that the consuming public is likely to be confused, mistaken, or deceived into believing that Defendants' goods or services originate from TTN or are in some way related to, associated with, or sponsored by TTN.

103.    TTN believes that it has been and will continue to be damaged by the Viljoen Registration and the registration of this mark is likely to cause confusion, mistake or to deceive the consuming public and that TTN's rights will be diminished by the continued registration thereof.

104.    Accordingly, this Court may order the cancellation of the Viljoen Registration and order the registration removed from the register.

## **SEVENTH CLAIM FOR RELIEF**

### **(Common Law Trademark Infringement Against All Defendants)**

105.    TTN realleges and incorporates by reference as though fully set forth herein the allegations contained in the preceding paragraphs.

106.    TTN owns and has superior rights in and to the Oval Double T Mark.

107.    TTN has continuously and extensively used the Oval Double T Mark since as early as 2011 in connection with its nail care products, services, and salons.

108.    By virtue of Defendants' willful disregard for TTN's trademark rights, and Defendants' knowing and intentional misrepresentations, Defendants' conduct,

SNELL & WILMER
L.L.P.
LAW OFFICES
350 SOUTH GRAND AVENUE
SUITE 3100
CITY NATIONAL PLAZA
LOS ANGELES, CALIFORNIA 90071

as described above, misleads the public as to the nature, source and/or origin of Defendants' goods and services, so as to create a likelihood of confusion as to the nature, source, or sponsorship of Defendants' goods and services.

109.    Defendants' conduct wrongfully tarnishes the goodwill symbolized by the Oval Double T Mark.

110.    By reason of Defendants' acts, TTN has suffered and continues to suffer damage to its business, reputation, and goodwill, and the loss of sales and profits TTN would have made but for Defendants' acts, in an amount to be proven at the time of trial, but at least $100,000,000.

111.    Defendants have continued to engage in the acts complained of herein after TTN alerted Defendants to their infringement, and unless restrained and enjoined, Defendants may continue to do so, all to TTN's irreparable harm.  It would be difficult to ascertain the amount of compensation which would afford TTN adequate relief from such continuing acts, and a multiplicity of judicial proceedings would be required.  TTN's remedy at law is not adequate to compensate it for the injuries threatened.

## **PRAYER FOR RELIEF**

WHEREFORE, TTN prays for the following relief:

**On the First, Second, and Seventh Claims for Relief:**

1.    For compensatory, consequential, and other damages in an amount to be proven at trial but no less than $100,000,000.

**On the Third and Fourth Claims for Relief:**

1.    That Defendants be required to account to TTN for any and all profits and other gains derived by Defendants from the use of the Marks;

2.    That the Court award TTN treble the amount of actual damages suffered by TTN; and

3.    That the Court award TTN the amount of actual damages suffered by TTN in an amount to be proven at trial, but not less than $100,000,000, if the Court

for any reason does not award TTN treble the amount of actual damages suffered by TTN.

**On the Fifth Claim for Relief:**

1. That Defendants be required to account to TTN for any and all profits and other gains derived by Defendants from the use of the Marks; and

2. That the Court award TTN, at its election, (a) three times Defendants' profits or any damages sustained by TTN, whichever is greater, or (b) an award of statutory damages in the amount of (i) not less than $1,000 or more than $200,000 per counterfeit mark per type of goods sold, offered for sale, or distributed; or (ii) if the Court finds that the use of the counterfeit marks was willful, not more than $2,000,000 per counterfeit mark per type of goods sold, offered for sale, or distributed.

**On the Sixth Claim for Relief:**

1. That the Court order the cancellation of the Viljoen Registration and order the registration removed from the USPTO register.

**On the First, Second, Third, Fourth, Fifth, and Seventh Claims for Relief:**

1. That this Court grant an injunction pursuant to the powers granted it under 15 U.S.C. § 1116 or under the agreements at issue, enjoining and restraining Defendants and their agents, servants, and employees from further acts of unfair competition or infringement, including, without limitation, directly or indirectly using the Marks, or any other mark similar to the Marks;

2. In furtherance of the injunction, that Defendants deliver to TTN for destruction all signs, products, advertisements, literature, and any other promotional material, which feature the Marks or any other trademarks confusingly similar to the Marks;

3. In furtherance of the injunction, that Defendants shut down the Website;

4. In furtherance of the injunction, that Defendants cease selling any

SNELL & WILMER
L.L.P.
LAW OFFICES
350 SOUTH GRAND AVENUE
SUITE 3100
CITY NATIONAL PLAZA
LOS ANGELES, CALIFORNIA 90071

franchises or license agreements to any third parties that concern or use the Marks or purport to be associated with TTN;

5.    In furtherance of the injunction, TTN requests that this Court permanently enjoin Defendants and their agents, servants, and employees from:

       a.    Offering for sale, soliciting sales, advertising, or selling any products in any medium under any mark, name, symbol, logo, or other indicia that incorporates or is confusingly similar to the Marks;

       b.    Offering for sale, soliciting sales, advertising, or selling any nail care products, services, or retail stores in any medium, under any mark, name, symbol, logo, or other indicia that is likely to cause confusion or to cause mistake or to deceive persons into the erroneous belief that Defendants' products or services originate from TTN, or that Defendants or their agents are authorized by TTN or are endorsed by TTN or are sponsored by TTN, or are connected in some way with TTN; and

       c.    Using false designations or from engaging in any act or series of acts that, either alone or in combination, constitute deceptive or unfair methods of competition with TTN and from otherwise interfering with, or injuring TTN's Marks or the goodwill associated therewith;

**On Each and Every Claim for Relief:**

1.    That the Court award reasonable attorneys' fees and costs, either under the agreements or under 15 U.S.C. § 1117;

2.    That the Court award prejudgment interest;

3.    For such other preliminary, provisional, and permanent injunctive relief or order for specific performance as may be necessary to restrain Defendants from further acts in violation of TTN's legal rights; and

SNELL & WILMER
L.L.P.
LAW OFFICES
350 SOUTH GRAND AVENUE
SUITE 3100
CITY NATIONAL PLAZA
LOS ANGELES, CALIFORNIA 90071

1        4.    For such other relief as this Court may deem necessary or appropriate.

2

3    Dated:    April 22, 2024        SNELL & WILMER L.L.P.

4

5    By:

6                          Patrick W. Kelly
                      Aliya L. Astaphan

7

8                          Attorneys for Plaintiff
                      Tammy Taylor Nails, Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SNELL & WILMER
L.L.P.
LAW OFFICES
350 SOUTH GRAND AVENUE
SUITE 3100
CITY NATIONAL 2CAL
LOS ANGELES, CALIFORNIA 90071

# **DEMAND FOR JURY TRIAL**

Tammy Taylor Nails, Inc. hereby demands a trial by jury on all claims triable by jury.

Dated:          April 22, 2024          SNELL & WILMER L.L.P.

By: _____
Patrick W. Kelly
Aliya L. Astaphan

Attorneys for Plaintiff
Tammy Taylor Nails, Inc.

4871-4905-8231

CASE NO. 24CV0624 BAS JLB
FIRST AMENDED COMPLAINT