# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAMMY TAYLOR NAILS, INC., <br><br> Plaintiff, <br><br> v. <br><br> MELANY VILJOEN, PEET VILJOEN, TAMMY TAYLOR GLOBAL FRANCHISING, and DOES 1 THROUGH 10, <br><br> Defendants. | Case No. 24-cv-0624-BAS-DTF <br><br> **ORDER REQUESTING SUPPLEMENTAL BRIEFING RE: SERVICE OF PROCESS AND SPECIFIC JURISDICTION** |

This case concerns a United States business that agreed to allow two individuals in South Africa to license and distribute its business throughout Australia and Africa using its Marks. Tammy Taylor Nails, Inc., is the United States business and the plaintiff ("TTN" or "Plaintiff"). Melany and Peet Viljoen ("the Viljoens") are two of the defendants and the two individuals who agreed to license and distribute franchises and products under the TTN name in Africa.

In April 2017, TTN entered into an International Distribution Agreement (the "Distribution Agreement") with the Viljoens. (FAC ¶¶ 10, 27; FAC Ex. J.) The Distribution Agreement granted the Viljoens the rights to distribute TTN products in Australia and Africa. (*Id.* ¶ 27; *id.*, Ex. J.) Accordingly, the Distribution Agreement also granted the Viljoens the limited ability to use TTN's trademarks "solely in connection with the promotion, advertising, and distribution of the Products within the Territory and only

during the Term." (*Id.* ¶ 27 (quoting *id.*, Ex. J).) The Distribution Agreement also included language to govern the Viljoens' rights after the Distribution Agreement was terminated. It specifically stated, and the Viljoens agreed to the specific clause, that the Viljoens were not to use any of TTN's trademarks after the Distribution Agreement was terminated. (*Id.*¶ 29; *id.*, Ex. J.)

A year and a half after entering into the Distribution Agreement, TTN entered into a Master License Agreement (the "License Agreement") with the Viljoens, giving them rights to use TTN's marks and TTN's system for operating nail salons so the Viljoens could open nail salons in Africa under the Tammy Taylor Nails name. (*Id.* ¶¶ 10, 30; *id.*, Ex. K.) The License Agreement also required the Viljoens to acknowledge that TTN owned the trademarks, including the United States Marks and the Oval Double T Mark. (*Id.* ¶ 31; *id.*, Ex. K.) Like the Distribution Agreement, the License Agreement revoked the Viljoens' rights, and any sublicenses they had been granted, whenever the License Agreement was terminated. (*Id.* ¶ 32; *id.*, Ex. K.) The business relationship between the Viljoens and TTN was relatively short-lived after that. TTN terminated both Agreements in 2021, effectively terminating the Viljoens' rights under the Agreements by April 2022. (*Id.* ¶¶ 10, 33.)

Since terminating the Agreements, TTN alleges the Viljoens formed a company in South Africa whose very name infringes one of TTN's Marks: "Tammy Taylor Global Franchising" (collectively, with the Viljoens, "Defendants"). (*Id.* ¶¶ 10, 35.) Defendants have advertised Tammy Taylor Global Franchising with a billboard in Times Square and by offering global franchises on their website https://tammytaylornails.org.za (the "Website"). (*Id.* ¶ 35; *see also* ECF No. 20, Ex. 28 at 145 (showing a website, registered to Tammy Taylor Global Franchising, that seems to offer the opportunity to "OWN A FRANCHISE").)

While TTN's principal place of business is in Southern California (FAC ¶ 5), the two individual defendants, Melany and Peet Viljoen, are each domiciled in South Africa, and Tammy Taylor Global Franchising is an entity formed in South Africa with its principal place of business located there (*id.* ¶¶ 6–8).

Plaintiff filed its Complaint on April 2, 2024, and then filed its First Amended Complaint on April 22, 2024. (ECF Nos. 1, 5.) Plaintiff attempted service on May 16, 2024. (ECF Nos. 6–7.) On June 24, 2025, the clerk entered default against Defendants. (ECF No. 10.) Plaintiff now seeks default judgment against Defendants. (ECF No. 17.)

## I. LEGAL STANDARD

Generally, after entry of default, a party is entitled to apply to the court for default judgment when a party has failed to plead or defend. Fed. R. Civ. P. 55(b)(2). Upon entry of default, the factual allegations in a plaintiff's complaint, except those relating to damages, are deemed admitted. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (citation omitted).

When ruling on a motion for default judgment, "a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties" given that "[a] judgment entered without personal jurisdiction over the parties is void." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). Thus, "[t]o avoid entering a default judgment that can later be successfully attacked as void, a court should determine whether it has the power, i.e., the jurisdiction, to enter the judgment in the first place." *Id.*; *see also Facebook, Inc. v. Pedersen*, 868 F. Supp. 2d 953, 961 (N.D. Cal. 2012) (recommending the district judge "deny Facebook's motion for default judgment and . . . dismiss this action for lack of personal jurisdiction"). "The Court is also required to assess the adequacy of the service of process on the party against whom default is requested." *DFSB Kollective Co. v. Bourne*, 897 F. Supp. 2d 871, 877 (N.D. Cal. 2012) (citation omitted).

Having satisfied itself as to the procedural considerations and jurisdiction, entry of default judgment is within the trial court's discretion. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).

## II. PERSONAL JURISDICTION

At this point, the Court is not satisfied that it has personal jurisdiction over each of the defendants as to each of the claims. "Personal jurisdiction must exist for each claim asserted against a defendant." *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004) (citing *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1289 n.8 (9th Cir. 1977)).

The general rule provides personal jurisdiction over a defendant is proper if it is permitted by a long-arm statute and if the exercise of that jurisdiction does not violate federal due process. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). Federal courts generally follow the forum state's law in determining the limits of their jurisdiction over individuals. *Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1106 (9th Cir. 2020) (citation omitted). Both the federal and California's long-arm statutes require compliance with due process requirements. Fed. R. Civ. P. 4; Cal. Civ. Proc. Code § 410.10. For due process to be satisfied, a defendant must have "minimum contacts" within the forum state such that asserting jurisdiction over the defendant would not "offend traditional notions of fair play and substantial justice." *Pebble Beach Co.*, 453 F.3d at 1155 (citing *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 315 (1945)).

There are two types of personal jurisdiction: general and specific. *Daimler AG v. Bauman*, 571 U.S. 117, 118 (2014). Because no defendant here is domiciled in or could be considered as residing in California or even the United States, only specific jurisdiction is relevant here. Specific jurisdiction permits the court to exercise jurisdiction over a defendant who has availed itself of the forum by conducting forum-related activities that gave rise to the action before the court. *Bancroft & Masters, Inc. v. August Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000), *overruled on other grounds in part by Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199 (9th Cir. 2006).

Service of process is a prerequisite for personal jurisdiction over a defendant. *See Jackson v. Hayakawa*, 682 F.2d 1344, 1347 (9th Cir. 1982) ("Defendants must be served

in accordance with . . . the Federal Rules of Civil Procedure, or there is no personal jurisdiction."). "Neither actual notice, nor simply naming the person in the caption of the complaint, will subject defendants to personal jurisdiction if service was not made in substantial compliance with Rule 4." *Id.* (citations omitted).

Accordingly, the Court analyzes service of process and minimum contacts as to each of the individual defendants and then as to the corporate defendant. Because the Court finds service of process was not perfected as to the corporate defendant, and specific jurisdiction was not established as to each of the defendants and each of the federal claims, the Court requests supplemental briefing on the issues of service of process and specific jurisdiction.

### A. The Viljoens

#### 1. Service of process.

Sufficiency of service of process is governed by Federal Rule of Civil Procedure 4. Specifically, Rule 4(f) governs service on an individual in a foreign country. The Viljoens reside in South Africa and therefore Rule 4(f) governs appropriate service of process procedure. (FAC ¶¶ 6–7.)

Rule 4(f) offers several possible methods for effecting service on an individual in a foreign country. For instance, an individual may be served "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents." Fed. R. Civ. P. 4(f)(1). Plaintiff does not cite to, nor could this Court discover, an internationally agreed-upon means of service (entered into by both the United States and South Africa) by which Plaintiff could serve the Viljoen Defendants. Therefore, Rule 4(f)(1) does not apply.

Fortunately, Rule 4(f)(2)(A) allows service on a party in a foreign country so long as that service is executed in accordance with the "the foreign country's law for service in that country in an action in its courts of general jurisdiction." South African law permits personal service. Rule 4 of the South African Uniform Rules of Court ("Uniform Rules") governs service of process and provides for various means of service in courts of general

jurisdiction in South Africa. Of relevance here, Uniform Rule 4(1)(a)(i) provides that service of any process of the court be directed to the sheriff and that a sheriff effects service by delivering a copy to a named defendant personally, Uniform Rule 4(1)(a)(i), or that a sheriff may effect service "by delivering a copy thereof at the place of employment of the said person, . . . to some person apparently not less than sixteen years of age and apparently in authority over him;" Uniform Rule 4(1)(a)(iii).

The Viljoen Defendants have each been served in accordance with Universal Rule 4. Peet Viljoen was personally served by a sheriff in Menlyn, South Africa, at an office park. (ECF No. 7.) The sheriff attests Peet Viljoen was served with the civil summons, report on the filing or determination, the Complaint, the First Amended Complaint, and disclosure statement. (*Id.*) The contents of the sheriff's affidavit show service upon Peet Viljoen complied with Uniform Rule 4's requirements as contained in Uniform Rule 4(1)(b)–(d). Service took place at a permissible time. (*Compare* ECF No. 7 (showing service took place at 10:31), *with* Uniform Rule 4(1)(b) (requiring service be effected "as near as possible between the hours of 7 a.m. and 7 p.m.).) Service did not take place on a Sunday. (*Compare* ECF No. 7 (showing service took place on May 17, 2024, a Friday), *with* Uniform Rule 4(1)(c) (requiring service not take place on a Sunday unless otherwise directed by a court or judge).) And the nature and contents of the served documents were explained to Peet Viljoen. (*Compare* ECF No. 7 ("[T]he nature and contents thereof [were] explained to [Peet Viljoen]"), *with* Uniform Rule 4(1)(d) ("It shall be the duty of the sheriff or other person serving the process or documents to explain the nature and contents thereof to the person upon whom service is being effected and to state in his return or affidavit or on the signed receipt that he has done so.).) That Peet Viljoen evidently refused to sign does not appear to have an impact on the legitimacy of service of process. *See generally* Uniform Rule 4.

The affidavit attesting to service upon Melany Viljoen is virtually identical except that service took place via substitute service upon Peet Viljoen, evidently in compliance with Uniform Rule 4(1)(a)(iii), wherein a sheriff effects service by leaving a copy of the

documents with a person in charge at the location. (*See* ECF No. 6 (attesting that the sheriff served the documents upon "MR P VILJOEN" (Peet Viljoen) and identifies him as the "HUSBAND" before noting service was completed in accordance with "Rule 4(1)(a)(iii)").) Because this substitute service took place at virtually the same moment as service upon Peet Viljoen, and the contents of the affidavit are nearly identical, minus the language regarding substitute service, service of process likewise appears to have complied with Uniform Rule 4.

Accordingly, under Federal Rule of Civil Procedure 4(f)(2)(A), the Viljoens were served "as prescribed by [South Africa's] law for service in [South Africa] in an action in its courts of general jurisdiction." Therefore, under Federal Rule of Civil Procedure 4(l)(2)(B), the Court is satisfied that the summons and complaint were properly served upon the Viljoens.

### 2. Specific jurisdiction over the Viljoens

Having determined service was proper, the Court now turns to whether each of the Viljoens had sufficient minimum contacts to be subject to specific jurisdiction as to each of the claims alleged against them. *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004) ("Personal jurisdiction must exist for each claim asserted against a defendant." (citation omitted)).

#### i. Breach of contract claims

From the outset, Plaintiff notes that the Viljoens consented to this Court's jurisdiction regarding claims concerning the Agreements when they signed the Agreements. (Mot. at 17 n.2.) Indeed, Tammy Taylor ("Taylor") attests that she signed the Distribution Agreement and the License Agreement along with the Viljoens. (*Id.*, Taylor Decl. ¶¶ 10, 12.) Plaintiff has included copies of these signed agreements as Exhibits 24 (the Distribution Agreement) and 25 (the License Agreement). Taylor attests the copies of these Agreements are true and correct. (*Id.*) The Distribution Agreement forum selection clause reads, "each party irrevocably submits to the exclusive jurisdiction of the federal and state courts located in the State of California for the purposes of any action or

proceeding arising out of or relating to this Agreement." (Mot., Ex. 24 at § 14(b).) The License Agreement includes identical language. (*Id.*, Ex. 25 at § 11.2.)

"Forum selection clauses are presumptively valid." *Melendez*, 2017 WL 8183139, at *3, (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972)); *see also Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 325 (9th Cir. 1996) ("Although *Bremen* is an admiralty case, its standard has been widely applied to forum selection clauses in general.") The Ninth Circuit has further recognized that the acceptance of a forum selection clause constitutes consent to personal jurisdiction in the identified forum. *SEC v. Ross*, 504 F.3d 1130, 1149 (9th Cir. 2007) (citing *Nat'l Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311, 315–16 (1964); *Dow Chem. Co. v. Calderon*, 422 F.3d 827, 831 (9th Cir. 2005)).

The Court sees no reason to find the instant forum selection clauses as anything other than valid. Accordingly, this Court has personal jurisdiction over each of the Viljoens as to the breach of contract claims.

### ii. Federal statutory claims

As to the remaining claims raised against the Viljoens, the Court questions whether it has personal jurisdiction to hear them. Because the Viljoens are not subject to general jurisdiction in any particular state, the Court must determine if it may exercise specific jurisdiction over the Viljoens via the federal long-arm statute. The Viljoens are South African citizens, and therefore not subject to general jurisdiction in any of the United States' courts of general jurisdiction. However, the federal long-arm statute allows any district court in the United States to exercise personal jurisdiction "[f]or a claim that arises under federal law," over a defendant who "is not subject to jurisdiction in any state's courts of general jurisdiction," so long as "exercising jurisdiction is consistent with the United States Constitution and laws." Fed. R. Civ. P. 4(k)(2); *see also Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 461 (9th Cir. 2007).

Due process requires that a nonresident defendant have "'certain minimum contacts' with the forum 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1208

(9th Cir. 2020) (quoting *Int'l Shoe*, 326 U.S. at 316). The type and number of contacts required by the due process clause are a function of whether the plaintiff is asserting "specific" personal jurisdiction or "general" personal jurisdiction. *See Walden v. Fiore*, 571 U.S. 277, 283 n.6 (2014). As noted, this case requires specific personal jurisdiction. "For a State to exercise [specific] jurisdiction [under its state long-arm statute] consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Id.* at 284. The analysis under the federal long-arm statute is the same except for one difference: rather than "considering contacts between the [defendant] and the forum state, [the court must] consider contacts with the nation as a whole." *Holland Am. Line Inc.*, 485 F.3d at 462; *see also Wanat*, 970 F.3d at 1208 (same).

In the Ninth Circuit, courts conduct a three-pronged inquiry to determine whether a nonresident defendant has sufficient "minimum contacts" with the forum (here, the United States) to warrant the exercise of specific personal jurisdiction:

> (1) the defendant must either "purposefully direct his activities" toward the forum or "purposefully avail [] himself of the privileges of conducting activities in the forum";
> (2) "the claim must be one which arises out of or relates to the defendant's forum-related activities"; and
> (3) "the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable".

*Wanat*, 970 F.3d at 1208 (quoting *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017)).

As to prong one, for claims sounding in tort like the infringement claims brought here, courts look to whether a defendant purposefully directed its activities at the forum state. *Wanat*, 970 F.3d at 1208. Courts apply the "effects" test from *Calder v. Jones*, 465 U.S. 783 (1984), to make this determination. The *Calder* effects test asks, "whether the defendant: '(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.'" *Will Co. v. Lee*, 47 F.4th 917, 922 (9th Cir. 2022) (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 803 (9th Cir. 2004); *see also Ford Motor Co. v. Mont. Eighth*

*Jud. Dist. Ct.*, 592 U.S. 351, 361 (2021). All three components must be met for a defendant to have purposefully directed its activities to the forum state. *Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 577 (9th Cir. 2018).

The Court requests supplemental briefing as to each of the Viljoens' contacts with the United States and whether the contacts related to each of the federal claims are sufficient to survive the *Calder* effects test. Should Plaintiff wish to impute any contacts of Tammy Taylor Global Franchising to the Viljoens (or vice versa), it must sufficiently allege a compelling legal theory for that imputation.

### B. Tammy Taylor Global Franchising

#### 1. Service of process

As it served the Viljoens, Plaintiff appears to have attempted to serve Tammy Taylor Global Franchising in accordance with South Africa's rules directing service. Uniform Rule 4 also governs service on a corporation:

> in the case of a corporation or company, by delivering a copy to a responsible employee thereof at its **registered office** or its **principal place of business** within the court's jurisdiction, or if there be no such employee willing to accept service, by affixing a copy to the main door of such office or place of business, or in any manner provided by law.

Uniform Rule 4(1)(a)(v) (S. Afr.) (emphasis added).

Attempted service of process on Tammy Taylor Global Franchising apparently took place contemporaneously with service on the Viljoens. (*See* ECF No. 8.) However, this Court cannot verify that appropriate service of process took place on Tammy Taylor Global Franchising because it is unclear whether the address where service took place, Menlyn Woods Office Park, 291 Sprite Avenue, Menlyn, is either a registered office or principal place of business of Tammy Taylor Global Franchising. (*Id.*) Accordingly, Plaintiff does not meet the requirements for service upon a corporation in South Africa, which requires copies of the documents be delivered to a "registered office or [the corporation's] principal place of business within the court's jurisdiction." Uniform Rule 4(1)(a)(v). Plaintiff alleges

that South Africa is Tammy Taylor Global Franchising's principal place of business, but this is insufficiently specific. (FAC ¶ 8.)

Therefore, this Court may not exercise jurisdiction over Tammy Taylor Global Franchising. However, Plaintiff is invited to either submit supplemental briefing demonstrating Tammy Taylor Global Franchising was served at a registered office or its principal place of business or otherwise make an argument as to why service of process was proper in this case.

### 2. Specific jurisdiction

Even if Plaintiff appropriately served Tammy Taylor Global Franchising, the Court requires additional briefing as to whether grounds exist to exercise specific jurisdiction over the company.

Because Tammy Taylor Global Franchising is not subject to general jurisdiction in any specific state, the Court must determine if it may exercise specific jurisdiction over the defendant via the federal long-arm statute. Defendant Tammy Taylor Global Franchising is a South African corporation, nowhere do its contacts with a state appear to be so systemic and continuous as to make the company subject to general jurisdiction there, and therefore the company is not subject to jurisdiction in any of the United States' courts of general jurisdiction.

Against Tammy Taylor Global Franchising, Plaintiff raises three claims under federal law of (1) Trademark Infringement Under 15 U.S.C. § 1114, (2) Violation of Lanham Act by Use of False Designation in Interstate Commerce, and (3) Counterfeiting under 15 U.S.C. § 1117.[1]

The same rules of specific jurisdiction apply to the claims against Tammy Taylor Global Franchising as apply to the claims against each of the Viljoens. Accordingly, in supplemental briefing, Plaintiff must explain and (to the extent practicable) provide support

---

[1] The cause of action is in fact established under 15 U.S.C. § 1114, and the recovery for violation of rights is established under § 1117.

for why this Court has specific jurisdiction over Tammy Taylor Global Franchising as to each of the claims asserted against it.

### III.  CONCLUSION

Accordingly, it is hereby **ORDERED** that Plaintiff file supplemental briefing with the Court no later than **May 7, 2025**. This briefing must address the adequacy of service of process on Tammy Taylor Global Franchising; and why personal jurisdiction exists over (1) Melany Viljoen, (2) Peet Viljoen, and (3) Tammy Taylor Global Franchising.

**IT IS SO ORDERED.**

**DATED: April 16, 2025**

**Hon. Cynthia Bashant, Chief Judge**
**United States District Court**